IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

GRISSELLE HERNANDEZ-CANCEL,

   Plaintiff,

         v.

CAROLYN W. COLVIN, COMMISSIONER
OF SOCIAL SECURITY,

   Defendant.

Civil No. 12-1487 (SEC)

**OPINION AND ORDER**

The plaintiff, Grisselle Hernández-Cancel (Hernández), brings this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the Commissioner of the Social Security Administration's denial of her application for disability insurance benefits Docket # 1. Hernández filed a memorandum of law supporting her request, Docket # 17, and the Commissioner opposed. Docket # 20. After reviewing the filings and the applicable law, the Commissioner's decision denying disability benefits is **AFFIRMED**.

**Factual and Procedural Background**

On September 25, 2007, Hernández filed an application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 301 et seq., alleging a disability onset date of December 30, 2006. Administrative Transcript (Tr.) 458. Hernández — who, at that time was in her early thirties — claimed to be disabled from full-time employment because of body pain caused by a "muscular chronic fati[g]ued syndrome." Tr. 477.

The application for disability benefits was denied initially and again upon reconsideration. Tr. 324, 325. Hernández then sought a hearing before an administrative law judge (ALJ), Tr. 29-61, and two hearings were held in early 2010. Tr. 34-54. At the hearings, Hernández, who was represented by counsel, waived her right to appear in person. Tr. 34.

**CIVIL NO. 12-1487 (SEC)**                                                                 Page 2

In a thorough and well-reasoned decision, the ALJ concluded — at step five of the sequential evaluation process — that Hernández was not disabled. <u>Despite</u> her limitations, the ALJ ultimately determined, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 28 (citations omitted). To reach her conclusion, the ALJ considered Hernández's medical history, age, education, work experience, and residual function capacity (RFC). <u>Id.</u> The ALJ also considered Hernández's medical records, including those from consultative examiners Drs. Luis Iturriño (psychiatrist), and Michael Babilonia (rheumatologist); and her treating doctors, Samuel Meléndez (internist), Dennis Suárez (rheumatologist), María F. Rodríguez (psychiatrist), and Japhet Gaztambide (psychiatrist). The ALJ also heard testimony from a vocational expert (VE), who testified that Hernández could "perform the requirements of representative occupations such as . . . [s]orter and [l]abeler or [t]icketer." Tr. 29 (citations omitted).

The following excerpts from the ALJ's decision best illustrate the ALJ's methodology and findings:

    1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

    2.    The claimant has not engaged in substantial gainful activity since December 30, 2006, the alleged outset date.

    3.    The claimant has the following severe impairments: fibromyalgia[1] and depression. These impairments are severe

---

[1] Judge Posner once defined fibromyalgia, also known as fibrositis as

[a] common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. Its cause or causes are unknown, there is no cure, and . . . its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient

**CIVIL NO. 12-1487 (SEC)**                                                                 **Page 3**

        because they impose upon the claimant more than minimal functional limitations and they only allow her to execute up to unskilled mental activities and light exertional work.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . .

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform light work . . . except that she is limited to single repetitive tasks with no necessity of close supervision and with good memory and judgment.[2]

6.  The claimant is unable to perform any past relevant work.

7.  The claimant was born on May 21, 1973 and was 33 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.  The claimant has at least a high school education and is not able . . . to communicate in English.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability . . . from December 30, 2006, through the date of this decision.

---

to flinch. Sarchet v. Chater, 78 F.3d 305, 306-07 (7th Cir.1996) (citations omitted); see also Cusson v. Liberty Life Assur. Co., 592 F.3d 215, 218 (1st Cir.2010) ("Fibromyalgia is characterized by chronic and frequently difficult to manage pain in muscles and soft tissues surrounding joints." (citations and internal quotation marks omitted)).

[2] A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a). The ALJ is responsible for deciding a claimant's RFC; and, in making that determination, the ALJ must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided by any medical sources. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . ."§ 404.1567 (b).

**CIVIL NO. 12-1487 (SEC)** Page 4

Tr. 20-22 (citations and typeface omitted).

Unhappy with the ALJ's determination, Hernández appealed. But the Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner and, therefore, subject to judicial review. Tr. at 1-3. This appeal followed. Docket # 1.

On appeal, Hernández assigns a two-fold error to the ALJ. She faults the ALJ for presenting the VE with a hypothetical that, in Hernández's view, failed to accurately reflect her physical limitations. Docket # 17, p. 2. This contention in turn depends on her other argument — namely, that the ALJ "ignor[ed] vital medical evidence" by allegedly jettisoning some of the medical determinations reached by her treating rheumatologist and internist, Drs. Suarez and Meléndez, respectively. Id. at 21-23.[3] The Commissioner opposed all of Hernández's contentions. Docket # 20.

**Standard of Review**

The scope of review over the Commissioner's final decision is limited both by statute and case law. See 42 U.S.C. § 405(g). Section 405(g) provides that the findings of the Commissioner "as to any fact, if supported by substantial evidence, shall be conclusive . . . ." In Richardson v. Perales, 402 U.S. 389 (1971), the Supreme Court defined "substantial evidence" as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 401. In line with this definition, the First Circuit has directed courts in this District to uphold the Commissioner's "findings . . . if a reasonable mind,

---

[3] Although it appears from the record, see Tr. 26, that the ALJ also assigned less weight to Dr. Gaztambide's opinion — a treating psychiatrist — Hernández does not allege on appeal that the ALJ erred in doing so. Here, in fact, Hernández assigns no error to the ALJ's finding of her mental RFC; she solely impugns the ALJ's findings with respect to her physical RFC. So the Court need not decide if the ALJ properly calculated her mental RFC. See Soto-Cedefio v. Astrue, 380 Fed. Appx. 1, 3 (1st Cir. 2010) (per curiam). "If there was error in how the ALJ proceeded, . . . she has waived the defect." Id. (citations omitted).

**CIVIL NO. 12-1487 (SEC)**                                                                                          **Page 5**

reviewing the evidence as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Secretary of H.H.S., 955 F.2d 765, 769 (1st Cir. 1991). Even if the record could justify a different conclusion, the Commissioner's findings must be affirmed if supported by substantial evidence. Evangelista v. Secretary of H.H.S., 826 F.2d 136, 144 (1st Cir. 1987). So absent a legal or factual error in the evaluation of a claim, the Commissioner's denial of disability benefits stands. Seavey v. Barnhart, 276 F.3d 1, 15 (1st Cir. 2001).

**Applicable Law and Analysis**

Before addressing the propriety of the hypotheticals presented to the VE, the Court tackles an antecedent question: Whether the ALJ's RFC finding is supported by substantial evidence. That determination turns on the sufficiency and validity of the ALJ's explanations for refusing to give controlling weight to some of the opinions reached by Hernández's treating doctors.

*Treating Source Opinion and RFC Finding*

"Under the relevant regulation," the First Circuit has made clear, "a treating source's opinion on the question of the severity of an impairment will be given controlling weight so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Polanco-Quiñones v. Astrue, 477 F. App'x 745, 746 (1st Cir. 2012) (per curiam) (alterations in original; quoting 20 C.F.R. § 404.1527(d)(2)). It also flows from this regulation that an ALJ must give "supportable reasons" for rejecting a treating source's opinion. Soto-Cedeño v. Astrue, 380 F. App'x 1, 4 (1st Cir. 2010) (per curiam); see 20 C.F.R. § 404.1527(d)(2) (providing that an ALJ must give "good reasons" for the weight accorded to a treating source's opinion). "Exactly how much weight the ALJ affords depends on a number of factors, such as the length, nature, and extent of the physician and claimant's treatment relationship, . . . whether the physician supported his or her opinions with sufficient explanations, . . . and whether the physician specializes in the medical conditions at issue . . . ." Elder v. Astrue, 529 F.3d 408, 415 (7th Cir. 2008) (citations omitted).

**CIVIL NO. 12-1487 (SEC)**                                                                                                              **Page 6**

Here, as said, Hernández argues that the ALJ failed to comply with this regulation. The thrust of her contention is that the ALJ impermissibly "discredit[ed] and disregard[ed]" the opinions of her treating rheumatologist and internist. Docket # 17, p. 18 (typeface omitted). This argument lacks merit.

As an initial matter, the factual premise on which her argument rests is faulty. She says that the ALJ jettisoned Drs. Suárez and Meléndez's opinions. But that is an overreading of the ALJ's decision. Rather, as made clear in her decision, the ALJ merely "afforded less credibility" to their opinions. Tr. 26.[4] To make matters worse, Hernández fails to make a developed argument regarding the ALJ's decision on this front; she fails to explain — other than repeating her argument in a perfunctory way — how and why the reasons given by the ALJ were not "good reasons." She thus waived this argument. See Figueroa-Perea v. Comm'r of Soc. Sec., 78 F. App'x 134, 135 (1st Cir. 2003) (per curiam); Kase v. Comm'r of Soc. Sec., 10-12926, 2011 WL 3034423, at *3 (E.D. Mich. June 29, 2011) ("Plaintiff's perfunctory statement does not . . . attempt to engage or refute the occupational therapist's conclusions."). In any event, ALJ gave "good reasons" to substantiate such a decision, which is in turn supported by substantial evidence.

To begin with, the record shows that the ALJ first rejected Dr. Meléndez's opinion that Hernández was "disabled for any kind of work," reasoning that such a legal opinion "is not binding on the matter of disability as this issue should be reserved for the Commissioner to resolve." Tr. 24 (citation omitted). The ALJ's refusal to accept Dr. Meléndez's opinion on the

---

[4] The ALJ, for instance, accepted the treating doctors' fibromyalgia diagnosis, concluding that this accepted medical condition was a severe impairment. See Tr. 20-22. The ALJ, however, placed less weight on their conclusions regarding the degree of disabling severity — i.e., the intensity, persistence, and limiting effects of the symptoms on Hernandez's ability to do basic work activities. See 20 C.F.R. § 416.929(a). See also Rivers v. Astrue, 280 Fed.Appx. 20, 22 (2d Cir. 2008) ("[M]ere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability . . . .").

**CIVIL NO. 12-1487 (SEC)**                                                                                           **Page 7**

ultimate issue of disability is inexpugnable, for she had no obligation "to accept as gospel" Dr. Meléndez's opinion on this ultimate issue. Stanistreet v. Chater, 21 F. Supp. 2d 1129, 1136 (C.D. Cal. 1995), aff'd, 106 F.3d 409 (9th Cir. 1997); accord, e.g., Gladden v. Commr of Soc. Sec., 337 Fed. App'x 136, 138 (2d Cir. 2009) (summary order) ("Federal regulations make clear that whether a physician believes an applicant is 'disabled' is irrelevant . . . ." (citation omitted)). It is beyond dispute that this legal determination "is reserved to the Commissioner." Id. (citing 20 C.F.R. § 416.927(e)(1)); see, e.g., Falcon-Cartagena v. Commr of Soc. Sec., 21 F. App'x 11, 12 (1st Cir. 2001) (per curiam); Salazar v. Barnhart, 172 F. App'x 787, 789 (10th Cir. 2006) (per curiam).

      The ALJ also denied controlling weight to Dr. Meléndez's opinion, because it was supported neither by his own "medical record and progress notes" nor by "the evidence as a whole," Tr. 25. For instance, the ALJ noted that since 2006, Hernández had visited Dr. Meléndez's "scarcely 6 to 7 times," but then in 2008, Dr. Meléndez "surprisingly completed a Medical Report addressing that the claimant had severe and extreme limitations." And while Dr. Meléndez admittedly opined that Hernández had "extreme limitation" in her movement, Tr. 594, the ALJ demurred that Dr. Melendez's own report inconsistently showed that "she had no limitations at all . . . to walk (gait, station and balance)." Tr. 24; see Tr. 593. The ALJ similarly stated that "the record as a whole" reflected that Hernández's "condition had remained pretty stable from a longitudinal perspective," reasoning that she was "never referred to a pain management clinic, or that she ever required to an increase in treatment frequency or intensity . . . ." Tr. 24-25. These constitute valid reasons for denying controlling weight to Dr. Meléndez's opinion, see Blair-Bain v. Astrue, 356 F. App'x 85, 87 (9th Cir. 2009) (mem.) (unpublished), and are in turn fully supported by the record. See Tr. 593, 595, 596, 597, 598, 603, 604, 605, 607, 616; see also Tr. 559-568.

**CIVIL NO. 12-1487 (SEC)**                                                                                          **Page 8**

Nor did the ALJ err when she refused to give controlling weight to Dr. Suárez's opinion. Of particular relevance to this appeal, Dr. Suárez, Hernández's treating rheumatologist, opined that in an eight-hour workday Hernández could only grasp, turn, and twist objects for one hour with each hand, and could perform fine manipulations for one hour with each hand. Tr. 675. Dr. Suárez also stated that she is "[u]nable to lift, carry and handle objects." Tr. 679. Hernández complains that the ALJ did not give "merited weight, or to a great extent ignored" Dr. Suárez's opinion on her "manipulative hands limitations," which, she says, are "imposed by claimant's painful fibromyalgia condition." Docket # 17, pp 2-3.

But the ALJ did give "good reasons" for discounting some weight to Dr. Suárez's opinion. For example, the ALJ noted that Dr. Suárez's medical report was unsupported by the progress notes. Tr. 25. The ALJ wrote:

> [T]the evidence from the progress notes is scant and not supportive of a finding of disability as defined in the Social Security rules and regulations. A couple of them relate to 2006 and one from October 2007. Then almost a year later, Dr. [Suárez] submitted a Medical Report with major limitations not supported by the progress notes. The claimant had some findings of trigger points in 2006 but they were of moderate intensity and only on two to three points. [While] some radiological studies were mentioned, they were not included . . . but they only led to mild or unremarkable findings. Only a Bone Scan study from 2006 was included in the medical evidence and it only revealed normal findings. . . .

Tr. 25; see also Tr.685, 686, 699.

Neither Dr. Suárez nor Dr. Melendez's progress notes, the ALJ further reasoned, reflected that Hernández "was being hindered by such a degree of limitations; she mainly complained of pain[,] but the records lacked findings on signs and clinical studies as to sustain completely disabling limitations." Id.[5] The ALJ then explained that the medical records do not even show

---

[5] Though subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, see Johnson, 597 F.3d at 412, such medical evidence is nevertheless relevant in gauging the severity of the claimant's pain and its disabling effects. 20 C.F.R. § 404.1529(c)(2); see Rico v. Secretary of Health, Education and Welfare, 593 F.2d 431, 433 (1st Cir.1979).

**CIVIL NO. 12-1487 (SEC)**                                                                    **Page 9**

"which functional limitations the claimant was exhibiting. The medical evidence refers only to scarce sporadic medical treatment and not of the intensity and frequency that one would expect from severe disabling conditions in a person as young as the claimant." Id.; see Sarchet, 78 F.3d at 307 (Posner, J.) (noting that some "[s]ome people may have such a severe case of fibromyalgia as to be totally disabled from working, . . . but most do not . . ." (citations omitted and emphasis added)). In fact, the record shows that neither physical therapy nor aerobic exercise was prescribed. Cf. Johnson v. Astrue, 597 F.3d 409, 412 (1st Cir. 2009) (per curiam). See also Tompkins v. Colvin, 1:13-CV-73, 2014 WL 294474, *5 (D. Me. Jan. 27, 2014) ("unlike in Johnson, the administrative law judge's reasons for rejecting the [treating physicians'] RFC opinion were premised on specific findings rather than a misunderstanding of the nature of fibromyalgia.") .

If more were needed, Hernández description of her daily activities undermined Drs. Suárez and Meléndez's opinions, which, in turn, were (unsurprisingly) dependent on her own subjective pain complains.[6] See Tr. 27. In 2007 and 2008 Hernández stated that she could drive, cook, shop (in stores), take care of her children (though sometimes with her husband's help), and do some household chores (such as washing clothes and cleaning the house weekly for approximately three hours). Tr. 27, 91, 92, 93, 98, 111, 112, 113, 114, 115. Such daily activities, the ALJ concluded (Tr. 25-26), contradicted the rather extreme limitations reported by her treating doctors. Cf. Pirtle v. Astrue, 479 F.3d 931, 935 (8th Cir. 2007); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

To be sure, in 2009 — "after she had secured herself a legal representation," Tr. 27 — Hernández "suddenly" "fe[lt] pain even in her jaw" and could no longer do any of the household chores mentioned above. Id.; see Tr. 547. Observing such a patent contradiction, the ALJ reasonably afforded less credibility to the 2009 reports, concluding that "this level of worsening

---

[6]As noted, see note 1 above, fibromyalgia's symptoms are entirely subjective.

is not reflected in the medical record." Tr. 27. Because resolution of conflicts in the evidence is for the ALJ, e.g., Rodríguez v. Secretary of Health and Human Services, 647 F.2d 218, 222 (1st Cir. 1981) (Breyer, J.), the ALJ permissibly afforded less credibility to the 2009 descriptions. See González Santiago v. Sec'y of Health & Human Servs., 960 F.2d 143, 1992 WL 80314, at *2 (1st Cir. Apr. 16, 1992) (per curiam) (unpublished table decision) ("It suffices to note in this regard that claimant's testimony as to the restrictions on her daily activities contradicted statements she had made earlier to the agency." (footnote omitted)). Notably, moreover, Hernández "waived h[er] right to appear at the hearing before the ALJ, which would have provided an opportunity for claimant to explain and demonstrate the functional impact of h[er] pain." Acosta v. Barnhart, 114 F. App'x 7, 9 (1st Cir. 2004) (per curiam).

In concluding that Hernández "was not completely disabled for all kinds of work activities but limited to a lower degree of physical or mental demands," Tr. 2, the ALJ instead placed more weight on the consulting rheumatologist's opinion, Dr. Babilonia. See Tr. 25.[7] He reported that Hernández could grip, grasp, finch, write, tap her fingers, button a shirt, and pick up a coin with both hands. Tr. 563. He also reported that she retained full muscle strength of 5/5 in each hand, Tr. 563; and that she exhibited normal range of motion in all joints, including the hands and fingers. Tr. 566-568; see also Tr. 129. Dr. Babilonia's opinion was fully supported by another consulting doctor, Dr. Francisco Rodríguez (specialty internist), who opined that Hernández could frequently lift and carry 25 pounds. Tr. 571.

Given the deficiencies that plagued Drs. Suarez and Meléndez's opinions (see above), the ALJ permissibly gave more weight to Dr. Babilonia's opinion, see 20 C.F.R. § 404.1527(f)(2)(ii)

---

[7] A rheumatologist's opinion is afforded greater weight than those of the other physicians (such as Dr. Meléndez's), as it constitutes an "opinion of a specialist about medical issues related to his or her area of specialty." 20 C.F.R. § 404.1527(d)(5). Rheumatology is the pertinent specialty for fibromyalgia. See, e.g., Benecke v. Barnhart, 379 F.3d 587, 594 n. 4. (9th Cir. 2004). "Specialized knowledge may be particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community." Id. (citations omitted); see note 1 above.

("[u]nless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant"), which "was supported by independent clinical findings," Walker v. Barnhart, 148 F. App'x 632, 633 (9th Cir. 2005) (mem.) (unpublished); see Tr. 25-26. The upshot is that the ALJ was entitled to place less weight on her treating physician's opinions. See Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982) (finding that treating physician's conclusions regarding total disability may be rejected by the ALJ especially when contradictory medical advisor evidence appears in the record); accord Elder, 529 F.3d at 415-16.

In short, because the ALJ gave specific and legitimate reasons for giving "little weight" to Drs. Suárez and Meléndez's opinions, her decision complied with the relevant social-security regulation. And because the ALJ properly included all limitations she found credible and supported by substantial evidence in the RFC finding, the ALJ properly concluded that Hernández's diagnosis of fibromyalgia "was not invariably disabling," Carbone v. Sullivan, 960 F.2d 143, 1992 WL 75143, at *6 (1st Cir. Apr. 14, 1992) (per curiam) (unpublished table decision); accord Prince v. Astrue, 514 F. App'x 18, 20 (2d Cir. 2013). Accordingly, substantial evidence supports the ALJ's conclusion that Hernández "is indeed disabled but only to carry on jobs above unskilled mental demands and above light levels of exertion." Tr. 27 (citation omitted).

*The VE's Hypotheticals*

Having established that the ALJ committed no error in assessing Hernandéz's RFC, the Court turns to whether the ALJ erred at step five by posing a deficient hypothetical question to the VE regarding Hernandez's current employment prospects. At step five of the disability analysis, the claimant need not produce any evidence. Seavey v. Barnhart, 276 F.3d 1, 10 n. 9 (1st Cir. 2001). Instead, "the Commissioner bears some type of burden to come forward with evidence showing that there are jobs that the applicant can perform despite his limitations." Id.

**CIVIL NO. 12-1487 (SEC)**                                                                 **Page 12**

And an ALJ can make this determination by obtaining the testimony of a VE about the claimant's vocational capacity. E.g., Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam).

Hernández says that the VE was presented with hypotheticals that "did not accurately reflect[ ] all of the claimant's limitations, in order for the VE's response to constitute substantial evidence." Docket # 17, p. 2. Specifically, she contends the ALJ's questioning of the VE about the availability of jobs for someone with her conditions failed to fully account for her "manipulative hand[ ] limitations, and other limitations produced by her painful fibromyalgia condition." Docket # 17, p. 15.[8] But the ALJ did introduce qualifications and limitations into the hypothetical scenarios she presented to the VE, see Tr. 43-46, and, more important, the ALJ included the "relevant facts." See Padilla v. Barnhart, 186 Fed.Appx. 19, 21-22 (1st Cir. 2006) (per curiam). Indeed, the record also shows that the ALJ "clearly conveyed the parameters of the claimant's restrictions," Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 274 (1st Cir. 1988) (per curiam): She asked the VE to assume an individual with Hernández's age, education, and past relevant work experience, who could perform light work, except that she could only do simple repetitive tasks with no necessity of close supervision and with good memory and judgment. Tr. 43-44. So Hernández's real disagreement is with the ALJ's decision to fully credit neither her description of her symptoms' severity nor some aspects of her treating doctor's opinions. But, as just explained, the ALJ was entitled to reject the extreme limitations mentioned in those sources. See Ramos v. Barnhart, 60 Fed.Appx. 334, 336 (1st Cir. 2003) (per curiam).

True, when Hernández's counsel asked the VE to assume that she had additional limitations based on some aspects of Drs. Suarez's opinion (e.g., manipulative limitations), the

---

[8] Insofar as Hernandez's arguments on appeal are based solely on the propriety vel non of the hypotheticals involving her physical limitations, she has waived any claims of defect with respect to the inclusion of her mental limitations in the ALJ's hypotheticals. See Soto-Cedefio 380 Fed. Appx. at 3; see also note 3 above.

VE testified that she could perform no jobs. Tr. 48-49. But again, the ALJ permissibly disregarded such hypotheticals, finding them neither compatible with her RFC finding nor supported by the record. See Hernández-Torres v. Secretary of Health and Human Services, 968 F.2d 1210, 1992 WL 164715, at *3 (1st Cir. Jul. 17, 1992) (per curiam) (unpublished table decision) (rejecting claimant's argument that ALJ should have relied instead on VE's answer to favorable hypothetical because "this argument . . . merely invites us to redetermine appellant's credibility, a matter necessarily committed to the ALJ"); Simila v. Astrue, 573 F.3d 503, 521 (7th Cir. 2009) (noting that an ALJ need only incorporate into her hypotheticals "those impairments and limitations that [s]he accepts as credible" (citation and internal quotation marks omitted)).

In sum, the hypotheticals posed by the ALJ — which were in accord with the RFC finding — "ha[ve] substantial support in the record, and, in response to . . . [these] hypothetical[s], the VE listed jobs that claimant could perform." Gonzalez-Rodriguez v. Barnhart,111 Fed.Appx. 23, 25 (1st Cir. 2004) (per curiam). Because the ALJ included all limitations that she found credible and supported by substantial evidence in determining the VE's hypothetical, the ALJ properly relied on vocational evidence at step five of the evaluation process to find that Hernández is capable of performing light work — requiring unskilled mental functions — that exists in significant numbers in the national economy.

**Conclusion**

For the reasons stated, the Commissioner's decision denying disability benefits is **AFFIRMED**.

**IT IS SO ORDERED**

In San Juan, Puerto Rico, this 19th day of March, 2014.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge